Mountjoy v. Cunningham                CV-00-018-JD  05/11/00
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Keith Mountjoy

     v.                              Civil No. 00-18-JD
                                     Opinion No. 2000 DNH 117
Michael J. Cunningham, Warden
New Hampshire State Prison


                          O R D E R


     Keith Mountjoy, proceeding pro se, petitions for habeas

corpus relief, pursuant to 28 U.S.C.A. § 2254, from his

incarceration for sentences imposed after his conviction on

charges of burglary and aggravated felonious sexual assault.  The

petitioner raises three issues in support of his petition:

violation of his right to conflict-free representation due to the

state trial court's failure to inquire of him about the disclosed

conflict; ineffective assistance of his appellate counsel in

failing to brief a claim that his trial counsel represented him

under an actual conflict of interest; and a due process violation

caused by delay in his appeal.  The respondent has answered the

petition.  Since the petitioner has not requested a hearing and a

hearing does not appear to be required, the petition may be

addressed on the present record.[1]  See Habeas Corpus Rule 8.

_____

     [1]The state courts' factual findings are presumed to be
correct since the petitioner has not challenged the findings with

## Background

The petitioner was tried three times on charges of burglary and aggravated felonious sexual assault and was represented by attorney Stephen Jeffco in each proceeding. The jury deadlocked on both charges in the first two trials. During an in-chambers conference before the third trial, Attorney Jeffco informed the trial judge that he was then representing one of the state's witnesses in an unrelated matter. The petitioner was not present during the conference. Jeffco told the court that he had informed the petitioner of the other representation and that the petitioner had consented to continue to be represented by Jeffco. Neither Jeffco nor the prosecutor believed that the other representation caused a conflict of interest with his representation of the petitioner.

Dennis Pratte, the witness represented by Jeffco, was the town police officer who had responded to the scene of the crime from which the charges against the petitioner arose. Pratte participated in the investigation of the crime and in the arrest of the petitioner. Jeffco represented Pratte on charges of

_____

clear and convincing evidence. See 28 U.S.C.A. § 2254(e)(1). The petitioner has not suggested that any additional factual development is necessary to present his claims. See § 2254(e)(2); Williams v. Taylor, ___ U.S.___, 2000 WL 385364 (Apr. 18, 2000).

2

felonious sexual assault of his stepdaughter, a matter unrelated to the charges against the petitioner. At the time of the petitioner's third trial, Pratte was awaiting trial on the charges. It does not appear that the court or the petitioner was aware of the nature of the charges against Pratte before or during the petitioner's trial.

Pratte testified at the petitioner's third trial, as he had at the first two trials. As the first officer at the scene of the crime, Pratte testified that the victim told him that she had no idea who had attacked her. Pratte's testimony was important to the defense because the victim later identified the petitioner, who lived in the same apartment building, based on recognizing his voice. Jeffco questioned Pratte about his investigation of the crime in the same manner as he had in the first two trials when Jeffco did not represent Pratte. The petitioner was found guilty on both charges on April 15, 1994.

On May 23, 1994, the petitioner, proceeding pro se, filed a motion for judgment of acquittal on the ground that his counsel had operated under a conflict of interest. A hearing was scheduled for June 14, 1994, on the petitioner's motion. On June 8, 1994, the court appointed public defender Andrew Schulman to represent the petitioner during post-trial proceedings and the hearing was continued to give Schulman time to prepare. In

3

February of 1995, Schulman filed a motion to set aside the verdict, raising issues of the court's failure to inquire into Jeffco's conflict of interest and ineffective assistance of trial counsel based on the conflict. A hearing was held on the petitioner's motions on August 10, 1995, and on August 22, 1995, the court issued an order denying the relief requested. The petitioner's notice of appeal was filed in September of 1995, and after the appeal was accepted, a brief was filed on behalf of the petitioner on April 1, 1996. The state sought and was granted an extension of time and filed its brief on June 16, 1996.

In the brief, the appellate defender, James Duggan, argued the issue of the petitioner's right to have the court inquire of him and hold a hearing on the issue of his counsel's conflict of interest. Although the issue of whether an actual conflict of interest existed was raised in the notice of appeal, it was not briefed. The case was argued to the supreme court on December 6, 1996, and the decision affirming the conviction issued on April 23, 1998. The supreme court held that under the state law rule in Hopps v. State Bd. of Parole, 127 N.H. 133, 140 (1985), the trial court should have inquired of the petitioner about his counsel's conflict of interest but that no constitutional violation occurred as a result of the court's failure to inquire. See State v. Mountjoy, 142 N.H. 648, 651 (1998). The court also

4

held that by not briefing the issue the petitioner had waived the issue of whether his trial counsel was representing him under an actual conflict of interest. See id. at 652.

In the meantime, the petitioner filed a petition for habeas relief in this court on October 8, 1997. The court determined that the petition included both exhausted and unexhausted claims and dismissed it as a mixed petition and denied the petitioner's request for a certificate of appealability. The First Circuit Court of Appeals also denied a certificate of appealability for lack of exhaustion.

The petitioner filed a petition for habeas corpus in state court on July 7, 1999. As grounds for relief, he argued that he was denied the effective assistance of counsel because the trial judge failed to personally inquire of him or hold a hearing on the question of his counsel's conflict of interest and that his appellate counsel provided ineffective assistance by failing to brief the actual conflict issue. A hearing was held on his petition on September 10, 1999, and the petition was denied in a written opinion issued on September 23, 1999. The petitioner represents that he filed a notice of appeal of that decision to the New Hampshire Supreme Court and that the court declined to hear the appeal.

## Discussion

The petitioner's three claims for habeas relief are: violation of his right to conflict-free representation due to the state trial court's failure to inquire of him as to whether he waived the right; ineffective assistance of his appellate counsel in failing to brief a claim that his trial counsel represented him under an actual conflict of interest; and a due process violation caused by delay in his appeal. In the answer, the respondent acknowledges that the first two issues have been exhausted, but contends that the third issue was never raised in state court and is unexhausted. The respondent asks that the court deny the petition on the merits rather than dismiss the petition because of the unexhausted claim.

Federal courts are barred from granting an application for a writ of habeas corpus to state prisoners unless the petitioner has exhausted all available state remedies. See 28 U.S.C.A. § 2254(b)(1). Habeas relief cannot be granted as to "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

6

evidence presented in the State court proceeding. 28 U.S.C.A. § 2254(d); see also Vieux v. Pepe, 184 F.3d 59, 62 (1st Cir. 1999). A factual determination made by a state court is presumed to be correct, and the petitioner may rebut the presumption only by clear and convincing evidence. See § 2254(e)(1).

As to each claim raised in an application for habeas relief, the court first determines whether clearly established federal law, based on Supreme Court precedent, governs the claim. See Torres v. Dubois, 174 F.3d 43, 46 (1st Cir. 1999). The court then decides whether the state court decision was "contrary to" or an "unreasonable application of" clearly established federal law. See Williams, 2000 WL 385369 at *22. A decision is "contrary to" clearly established law if the state court applied a legal standard that contradicts the governing federal law or, based on materially indistinguishable facts, came to a result that is different from the Supreme Court's previous result. See id. at *24. A decision is an unreasonable application of the law if, despite correctly identifying the governing legal precedent, the state court applied the law unreasonably to the facts of the case or unreasonably extended or failed to extend legal precedent

in a new context.[2]  See id. at *25.

When a petitioner has not exhausted available state remedies as to a claim raised in a habeas application, the federal court may nevertheless dismiss the application, despite the exhaustion requirement, when the merits of the claim are clearly not in the petitioner's favor.  See 28 U.S.C.A. § 2254(b)(2); West v. Vaughn, 204 F.3d 53, 63 (3d Cir. 2000).  Therefore, the court will begin with the unexhausted claim, which alleges a due process violation based on the time that elapsed between the petitioner's conviction and the supreme court's decision on his appeal.

A.  Appellate Delay

Extreme delay between the conviction and the resolution of the case on appeal can amount to a due process violation if the petitioner also shows that he was prejudiced by the delay.  See United States v. Luciano-Mosquera, 63 F.3d 1142, 1158 (1st Cir. 1995).  No constitutional inquiry is required unless there was a delay sufficient to raise concerns as to its prejudicial effects,

_____

[2]The Supreme Court's recent interpretation of the "contrary to" and "unreasonable application of" prongs of § 2254(d)(1) may call into question the First Circuit's interpretation announced in O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998).  See Williams, 2000 WL 385369 at *24-25.

8

in which case the court considers the reasons for the delay, whether the petitioner asserted his right to speedy process, and most importantly, whether the delay actually caused prejudice. See Barker v. Wingo, 407 U.S. 514, 530 (1972); Mims v. LeBlanc, 176 F.3d 280, 282 (5th Cir. 1999); United States v. Smith, 94 F.3d 204, 209 (6th Cir. 1996); United States v. Hawkins, 78 F.3d 348, 350 (8th Cir. 1996); Simmons v. Beyer, 44 F.3d 1160, 1169 (2d Cir. 1995); Latimore v. Spencer, 994 F. Supp. 60, 67 (D. Mass. 1998). "Whether an appellate delay results in prejudice sufficient to warrant reversing a conviction rests, most importantly, on a showing that it has impaired the appeal or the defense in the event of retrial." Luciano-Mosquera, 63 F.3d at 1158.

The petitioner was convicted in April of 1994; his notice of appeal was filed in September of 1995; the briefs were submitted to the New Hampshire Supreme Court by June of 1996; the case was submitted following oral argument in December of 1996; and the supreme court issued its decision in March of 1998. Whether the delay in resolving the appeal was sufficiently extreme to warrant constitutional inquiry need not be decided in this case because the petitioner has presented no evidence, argument, or allegations in support of his mere statement that he was prejudiced. There is nothing in the petition or the record that

9

would suggest that his appeal was prejudiced in any way by the delay.  Since his conviction was affirmed, no prejudice to his defense in the event of a retrial occurred.  Absent a showing of prejudice, the petitioner cannot prevail on an appellate delay claim.  See Luciano-Mosquera, 63 F.3d at 1158.

The petitioner's appellate delay claim, therefore, is dismissed on the merits.


B.  Failure to Inquire About Counsel's Conflict

The petitioner contends that the trial court's failure to inquire of him as to whether he knowingly waived his right to conflict-free representation was a violation of his Sixth Amendment right to counsel.  Relying on Holloway v. Arkansas, 435 U.S. 475 (1978), the petitioner contends that he was entitled to an automatic reversal of his conviction so that the state court's decision affirming his conviction was contrary to established Supreme Court precedent.  The claim asserting the petitioner's right to conflict-free representation and the court's obligation to conduct an adequate inquiry as to possible conflict is governed by Holloway, 435 U.S. 475; Cuyler v. Sullivan, 446 U.S. 335 (1980); and Wood v. Georgia, 450 U.S. 261 (1981).  See also Atley v. Ault, 191 F.3d 865, 870 (8th Cir. 1999).

If the trial court "'knows or reasonably should know that a

particular conflict exists,'" the court is constitutionally required to initiate an inquiry into the nature of the conflict and the defendant's knowledge of it.[3] Wood, 450 U.S. at 273 n.18 (quoting Cuyler, 446 U.S. at 347). Therefore, if the defendant made a timely objection to representation under a conflict and the trial court did not inquire further, an actual conflict is presumed and the conviction must be reversed. See Holloway, 435 U.S. at 484-91. On the other hand, when no objection is raised and "[a]bsent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." Cuyler, 446 U.S. at 346-47. A defendant who did not make a timely objection to possibly conflicted representation "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 348.

In this case, the petitioner's trial counsel, Attorney Jeffco, informed the court and the prosecutor, before the third

---

[3]Courts have interpreted the standards in Holloway and Cuyler to apply in other conflict situations in addition to the joint representation of co-defendants. See, e.g., Wood, 450 U.S. at 271-72; Riggs v. United States, ___ F.3d ___, 2000 WL 365279 at *6 n.1 (6th Cir. Apr. 11, 2000); Atley, 191 F.3d at 870 n.4; Spreitzer v. Peters, 114 F.3d 1435, 1451 n.7 (7th Cir. 1997).

trial began, that he had undertaken the representation of one of the state's witnesses, Officer Pratte, on an unrelated matter, after the conclusion of the second trial. Jeffco represented to the court that he did not believe a conflict of interest existed and that the petitioner had been informed and did not object to continued representation by Jeffco. The prosecutor agreed that Jeffco's representation of Pratte did not create a conflict of interest as to his representation of the petitioner. The discussion took place in chambers, not on the record, and the petitioner was not included nor did the court inquire of the petitioner as to his knowledge of the conflict or agreement to Jeffco's continued representation. The question of a conflict of interest did not arise again until the post conviction motions were filed.

In response to the petitioner's motion for judgment of acquittal, which raised the lack of an adequate inquiry into the conflict issue, the trial court conceded that further inquiry should have been made. The court reexamined the trial transcript, the pleadings, and held a hearing on the motion. The court found that Jeffco had disclosed to the petitioner just before trial that he represented Pratte in another matter. The court also found that Pratte provided favorable evidence for the defense on the issue of identification, that Jeffco would have

12

called him as a defense witness if the state had not, and that Jeffco handled the defense and his cross-examination of Pratte just as he had in the first two trials when he did not represent Pratte. Based on all of the evidence, including the testimony at the hearing, the trial court determined that Jeffco's representation of Pratte did not cause a conflict of interest in his representation of the petitioner.

On appeal, appellate counsel pursued the issue of whether the trial court made an adequate inquiry under the <u>Hopps</u> standard.[4] The New Hampshire Supreme Court held that the <u>Hopps</u> inquiry requirement applied to any potential conflict of interest, not exclusively to joint representation of co-defendants, and that the trial court should have conducted such an inquiry. <u>Mountjoy</u>, 142 N.H. at 683. The court concluded, however, that the requirement was merely a prophylactic state rule to avoid unnecessary collateral attacks on criminal convictions and was not constitutionally mandated. <u>See</u> <u>id.</u> at 684. The court held that the automatic reversal rule under <u>Holloway</u> was inapplicable to the case because the petitioner did not object at trial to the potential conflict and that the actual

---

[4]<u>Hopps</u>, 127 N.H. at 140 (requiring a hearing on the record to secure a defendant's informed consent to representation by counsel with a potential conflict of interest).

13

conflict standard under <u>Cuyler</u> applied instead.  <u>See</u> <u>id.</u>  Because the petitioner's appellate counsel had not briefed the issue of an actual conflict, however, the court deemed the actual conflict issue to have been waived.

The New Hampshire Supreme Court distinguished the Supreme Court's decision in <u>Wood</u>, 450 U.S. at 273, in which the Court considered the issue of conflict sua sponte and remanded the case for a hearing on the issue.  <u>See</u> <u>Mountjoy</u>, 142 N.H. at 685.  The New Hampshire court noted that unlike the trial court in <u>Wood</u>, the trial court in <u>Mountjoy</u> addressed the issue of whether an actual conflict existed in response to the post-trial motions obviating any need under <u>Wood</u> to reverse the convictions and remand for a hearing on the conflict issue.  <u>See</u> <u>id.</u>  The conviction was affirmed.

The New Hampshire Supreme Court correctly determined that this is not a case, as in <u>Holloway</u>, in which the defendant (or counsel) <u>objected</u> to a possible conflict of interest and the trial court ignored the possibility of a conflict and denied the objection without an adequate inquiry.[5]  The court's conclusion

_____

[5]The supreme court focused on the lack of an objection to the potential conflict and did not explicitly address the effect of the inquiry the trial court did make.  In this case, unlike <u>Wood</u>, defense counsel and the prosecutor assured the trial court that no conflict existed and that the petitioner had been

14

that automatic reversal was not mandated under Holloway, therefore, was neither contrary to nor an unreasonable application of Supreme Court precedent.

Under Wood, however, when a trial court knows or should have known of an unchallenged potential conflict, the court is obligated to make an adequate inquiry into the matter. See Wood, 450 U.S. at 270-71. If the court ignores an unchallenged potential conflict, the remedy applied in Wood is to vacate the conviction and remand the case for a hearing on the conflict issue to determine whether an actual conflict existed that would require reversal of the conviction. See Wood, 450 U.S. at 261. On the other hand, trial courts may rely on the good faith and good judgment of counsel in assessing the possibility of conflict and prejudice to the defendant, without making further inquiry into unchallenged but obvious potential conflicts such as joint representation of co-defendants. See Cuyler, 446 U.S. at 347-48. Therefore, to the extent Supreme Court precedent is clear, automatic reversal is not required when no objection has been made to an obvious potential conflict. See, e.g., Dawan v. Lockhart, 980 F.2d 470, 474 (8th Cir. 1992) (discussing inquiry

informed that his attorney also represented the state's witness. See Spreitzer v. Peters, 114 F.3d 1435, 1451-52 (7th Cir. 1997) (finding that trial court appropriately relied on defense counsel's assessment of potential conflict of interest).

15

requirement under Wood); Brien v. United States, 695 F.2d 10, 15 n.10 (1st Cir. 1982) (same); Mickens v. Greene, 74 F. Supp. 2d 586, 612-13 (E.D. Va. 1999) (same).

Wood, however, requires that an inquiry be made into an unchallenged potential conflict, which was known to the trial court, to determine whether an actual conflict existed. See Wood, 450 U.S. at 261. The state supreme court determined that the trial court satisfied the inquiry requirement because the court considered the conflict issue post trial and determined that no actual conflict existed. Other federal courts have considered the inquiry requirement in Wood and determined that any further judicial inquiry which establishes that no actual conflict existed fills the gap in the record and satisfies due process. See, e.g., Garcia v. Bunnell, 33 F.3d 1193, 1199 (9th Cir. 1994) (relying on district court's hearing on conflict); Brien, 695 F.2d at 15 n.10; Mickens, 74 F. Supp. 2d at 614 (discussing requirements and citing cases). See also O'Brien, 145 F.3d at 25 ("To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue."). The state supreme court's decision is neither contrary to nor an unreasonable application of the legal principles in Wood.

16

Therefore, under the circumstances of this case, where counsel raised the conflict issue before trial and told the court both that no actual conflict existed and that he had informed the petitioner, and the prosecutor agreed that no conflict existed, the New Hampshire Supreme Court's decision that Holloway did not apply and that Wood was satisfied by the trial court's post-trial inquiry was neither contrary to nor an unreasonable application of Supreme Court precedent. See Cuyler, 446 U.S. at 346-48; see also Williams, 2000 WL 385369 at *24.

The petitioner has not challenged the state court's determination of the facts and, therefore, has not provided clear and convincing evidence that the court's findings were erroneous. See § 2254(e). The state court's factual findings are therefore presumed to be correct. The record and the petition provide no basis to grant the writ due to a decision that was contrary to or an unreasonable application of Supreme Court precedent or that resulted from an unreasonable determination of the facts in the case. See § 2254(d).

C. Ineffective Assistance of Appellate Counsel

Constitutionally ineffective assistance of appellate counsel is reviewed under the familiar standard established in Strickland v. Washington, 466 U.S. 668 (1984). See Smith v. Robbins, 120 S.

17

Ct. 746, 764 (2000). The Strickland test requires claimants to prove that counsel's performance was both deficient and prejudicial to his case. See Strickland, 466 U.S. at 687; accord Roe v. Flores-Ortega, 120 S. Ct. 1029, 1034 (2000). Deficient performance is representation "that falls below 'an objective standard of reasonableness' under prevailing professional norms when considering all the circumstances." Matthews v. Rakiey, 54 F.3d 908, 924-35 (1st Cir. 1995) (quoting Strickland, 466 U.S. at 688). Counsel's performance is to be evaluated by a highly deferential standard in light of the circumstances that existed in the case at the time of counsel's conduct. See Roe, 120 S. Ct. at 1035. Prejudice "in this context means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Prou v. United States, 199 F.3d 37, 48-49 (1st Cir. 1999) (quoting Strickland, 466 U.S. at 494).

The petitioner raised the issue of ineffective assistance of appellate counsel in his state habeas proceeding. The state court considered the claim under the standard provided in a state case, State v. Wisowaty, 137 N.H. 298, 302 (1993), which relied on the Strickland standard.[6] See id. The state habeas court

---

[6]Since the state supreme court declined the petitioner's appeal in his habeas proceeding, the decision of the state trial

18

stated the applicable standard as follows:

> In order to prevail on a claim of ineffective assistance of counsel, petitioner must show (1) that his attorney made such egregious errors that he was not functioning as the counsel guaranteed by the Federal and State Constitutions, and (2) that such errors were prejudicial, in the sense that there is a reasonable probability that the result of the legal proceeding would have been different had he received competent legal representation.

Mountjoy v. Risley, No. 99-E-260 at 3, Sept. 26, 1999 (internal quotations omitted). The court's legal standard for ineffective assistance of counsel does not contradict the Strickland standard, nor is the decision different from a factually indistinguishable Supreme Court case. See Williams, 2000 WL 385369 at *24; see also, e.g., Smith v. Robbins, 120 S. Ct. 746 (2000) (discussing ineffective assistance claim for failure to file appellate brief on merits); Burger v. Kemp, 483 U.S. 776, 784 (1987) (discussing appellate counsel's discretion to choose meritorious claims).

The second prong of § 2254(d)(1) requires an analysis of whether a state court decision, applying the correct legal principles, was an unreasonable application of the law to the facts of the case. See Williams, 2000 WL 385369 at *27. The

court is the last reasoned opinion on the issue and is the decision that is considered for purposes of federal habeas review. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); accord Phoenix v. Matesanz, 189 F.3d 20, 25 (1st Cir. 1999).

19

state court determined that the petitioner could not show either that his appellate counsel's representation constituted sub-standard performance or that he was prejudiced by counsel's failure to brief the actual conflict of interest issue on appeal.

With respect to appellate counsel's representation, the state court credited counsel's testimony at the habeas hearing that he believed there was little factual basis for pursuing a claim of an actual conflict of interest and that he was concerned that pursuing such a weak claim would detract from the stronger claim based on the court's failure to inquire about the conflict. Quoting Burger, 483 U.S. at 784, the court held that counsel's decision to winnow out the weaker claim showed effective appellate advocacy.

The Supreme Court has held that appellate counsel is not obligated to raise and brief every colorable claim, but may, instead, choose the stronger claims to pursue on appeal. See Jones v. Barnes, 463 U.S. 745, 752 (1983); accord Smith v. Murray, 477 U.S. 527, 536 (1986). Appellate counsel's supportable strategic decision to forego an issue on appeal does not constitute ineffective assistance of counsel. See Burger, 483 U.S. at 784. Therefore, the state court's analysis of appellate counsel's performance is consistent with and not contrary to or an unreasonable application of Supreme Court

precedent.  See id. ("the 'process of "winnowing out weaker claims on appeal and focusing on" those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'") (quoting Smith, 477 U.S. at 536 quoting Jones 463 U.S. at 751-52 ).

As to whether a reasonable probability existed that briefing the actual conflict issue might have lead to a different outcome on appeal, there must have been a reasonable probability that an actual conflict of interest which adversely affected Jeffco's performance could have been shown to exist.  See Strickland, 466 U.S. at 692 (quoting Cuyler, 446 U.S. at 350).  The state habeas court reviewed the three alternative strategies the petitioner argued Jeffco might have pursued but for his concurrent representation of Pratte.  The court held that the evidence did not support a theory that the police, including Pratte, rather than the victim, suggested the petitioner as the perpetrator. The court also found the record showed that the police investigation was quite extensive, although not perfect, and that Jeffco had highlighted the deficiencies just as he had done in the two previous trials when he did not represent Pratte.  As to the petitioner's theory of impeaching Officer Pratte with his own indictment for sexual assault, the court said that such examination would not have been permissible under the rules of

evidence.

The court concluded that because of the importance to the defense of Pratte's testimony about the identification of the perpetrator, "<u>any</u> competent attorney representing the defendant would have pursued the same strategy in dealing with Pratte as was employed by Jeffco." <u>Mountjoy</u>, 99-E-260 at 6. The court held that appellate counsel determined correctly that Jeffco "did not have an actual conflict of interest arising out of his representation of Officer Pratte" and that appellate counsel "made a prudent and reasonable decision not to pursue before the supreme court the issue of an actual conflict of interest." <u>Mountjoy</u>, 99-E-260 at 7.

The state habeas court's analysis of the second prong of the <u>Strickland</u> standard, requiring a reasonable probability of a different outcome if the issue of actual conflict had been briefed, was neither contrary to nor an unreasonable application of Supreme Court precedent. <u>See</u> § 2254(d)(1). Since the petitioner did not challenge the factual basis of the court's decision and the record indicates no infirmity, there is no indication that the decision was based on an unreasonable determination of the facts. <u>See</u> § 2254(d)(2). The record does not support a writ of habeas corpus on the petitioner's ineffective assistance of appellate counsel claim.

22

<u>Conclusion</u>

For the foregoing reasons, the petitioner's application for a writ of habeas corpus (document no. 1) is denied.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

May 11, 2000

cc:  Keith Mounjoy, pro se
     Ann M. Rice, Esquire

23