Howard William FLOWERS,
Petitioner–Appellant,

v.

Kay WALTER, Respondent–Appellee.

No. 99–35552.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 2000.

Filed Feb. 9, 2001.

Jonathan S. Solovy, Bell, Flegenheimer & Solovy, Seattle, Washington, for the petitioner-appellant.

Paul D. Weisser, Assistant Attorney General, Department of Justice, Seattle, Washington, for the respondent-appellee.

Before: PREGERSON and D.W. NELSON, Circuit Judges, and KARLTON, District Judge.[1]

PER CURIAM:

Howard William Flowers, a Washington state prisoner, appeals the dismissal of his second petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. The district court dismissed Flowers's second petition after concluding that it did not rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A) (1994 & Supp. IV 1998). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## I.

### BACKGROUND

On January 17, 1979, Flowers was convicted of murder and sentenced to life in prison. Flowers filed a petition for a writ of habeas corpus on October 10, 1989, alleging constitutional violations unrelated to his second petition. The petition was denied on July 31, 1990.

On August 26, 1997, we granted Flowers leave to file a second habeas petition pursuant to 28 U.S.C. § 2244(b)(3)(A). The second petition alleged a violation of Flowers's constitutional rights under *Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). The Supreme Court decided *Riggins* in 1992, several years after the denial of Flowers's first habeas petition. *Riggins* holds that the forced administration of anti-psychotic drugs to a defendant during trial—without a determi-

---

1. The Honorable Lawrence K. Karlton, Senior United States District Judge for the Eastern District of California, sitting by designation.

nation by the court of overriding justification and medical appropriateness—is a violation of the Sixth and Fourteenth Amendments. *Id.* at 135–38, 112 S.Ct. 1810. Relying on *Riggins,* Flowers argues in his second petition that his constitutional rights were violated because the state forcibly medicated him with anti-psychotic drugs during his trial without first obtaining a ruling by the court of overriding justification and medical appropriateness.

During Flowers's 1978 murder trial, the state forced Flowers to ingest against his will a regimen of drugs, including barbiturates, an anti-psychotic, and an antidepressant.[2] During the trial, Flowers requested that the court order that he be taken off the drug regimen. The state then called as an expert, a doctor who testified in general terms about the drugs that Flowers was taking. The doctor did not examine Flowers, review his medical history, nor determine how these drugs would affect him. After the doctor testified, the court denied Flowers's request to be taken off the drugs. No expert testified that the drug regimen was medically necessary and appropriate in Flowers's case, nor did the court find that the treatment was justified.

Flowers argues that his forced ingestion of drugs prejudiced his right to a fair trial because the drugs caused him to exhibit highly prejudicial involuntary and inappropriate bodily movements. Specifically, Flowers claims that during the trial, the anti-psychotic medications caused him to grin and exhibit involuntary facial tics during testimony by the state's witnesses that concerned gruesome subject matter. Additionally, Flowers claims that the drugs, in combination with his underlying mental disorders, caused him to suffer major cognitive, intellectual, and emotional impairments.[3]

The district court dismissed Flowers's second petition because it concluded that the rule announced in *Riggins* was not "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2244(b)(2)(A).[4]

---

2. The state administered Trilafon, Phenobarbital, Dilantin, Benadryl, Sinequan, and Kemadrin to Flowers during his trial.

3. Flowers's first trial ended in a mistrial after the court determined that Flowers was incompetent to stand trial and committed him to the Monroe County Mental Health Center. Several months later, the court declared him competent to stand trial.

4. 28 U.S.C. § 2244 provides, in relevant part:

 (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

 (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-

 (A) *the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;* or

 (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

 (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

 (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

 (B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

 (C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.
-
 (4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

Id. (emphasis added).

## II.

## DISCUSSION

Flowers asks this court to determine that under 28 U.S.C. § 2244(b)(2)(A), he is entitled to have the district court consider the merits of his second habeas petition alleging a *Riggins* violation. To do so, we must conclude that *Riggins* constitutes a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review. Before addressing the question whether Flowers's petition meets the standard for filling a second or successive habeas petition, we must first determine the meaning of the language in 28 U.S.C. § 2244(b)(2)(A): "made retroactive to cases on collateral review by the Supreme Court." We must decide whether this language imposes a new standard of retroactivity that requires the Supreme Court to make an express declaration of retroactivity, or whether this language codifies the Supreme Court's approach to retroactivity announced in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In this opinion, we determine that § 2244(b)(2)(A) codifies *Teague*. We then determine that *Riggins* constitutes a "new rule of constitutional law" that should be applied retroactively under one of the *Teague* exceptions.

### A. Provisions of 28 U.S.C. § 2244(b)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996) made significant changes to 28 U.S.C. § 2244, which sets out the requirements for filing a second or successive habeas petition.[5] Under AEDPA, second or successive petitions for a writ of habeas corpus are permissible only if the petitioner can demonstrate either: (1) that his new claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2244(b)(2)(A); or (2) that his claim rests on the discovery of previously unavailable evidence regarding the petitioner's innocence, *id.* § 2244(b)(2)(B)(i)-(ii).

The AEDPA provisions require a petitioner seeking to file a second or successive habeas petition to first obtain authorization from the court of appeals. 28 U.S.C. § 2244(b)(3). To obtain this authorization, the petitioner must make a "prima facie" showing to the court of appeals that his petition satisfies one of the two grounds for a second or successive petition; i.e., that his claim is either based on a new rule of constitutional law made retroactive by the Supreme Court or the discovery of new, material evidence. 28 U.S.C. § 2244(b)(3)(C). "By 'prima facie showing' we understand [28 U.S.C. § 2244(b)(3)(C) to require] simply a sufficient showing of *possible* merit to warrant a fuller exploration by the district court." *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir.1997) (*quoting Bennett v. United States*, 119 F.3d 468, 469 (7th cir.1997)) (emphasis added).

If the court of appeals concludes that the petitioner has made a "prima facie" showing—a showing of possible merit—under § 2244(b)(3), the court will authorize the petitioner to file a second or successive petition in the district court. The district court is then required to determine if the habeas petition in fact satisfies the requirements for the filing of a second or successive petition under § 2244(b)(2)(A) or (b)(2)(B)(i)-(ii). *See* 28 U.S.C. § 2244(b)(4).[6] If the district court

---

**5.** Despite the fact that Flowers's first habeas petition was filed before enactment of the AEDPA, his second petition for a writ of habeas corpus is governed by the amended version of 28 U.S.C. § 2244. *See, e.g., Villafuerte v. Stewart*, 142 F.3d 1124, 1125 (9th Cir.1998) (denying petitioner leave to file a successive petition for a writ of habeas corpus under 28 U.S.C. § 2244(b)(3) where original petition was filed before passage of the AEDPA); *Calderon v. Thompson*, 523 U.S. 538, 544–545,

554, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (finding that although petitioner's first federal habeas was filed in 1990, his 1997 motion to recall the mandate, if characterized as an application for a successive petition, would have been subject to § 2244(b)).

**6.** We recently considered what the district court is required to find under § 2244(b)(4) in *United States v. Villa–Gonzalez*, 208 F.3d 1160 (9th Cir.2000). We determined that the dis-

concludes that the petitioner failed to establish eligibility under § 2244(b) to file a successive petition, the petitioner may appeal the district court's determination. The court of appeals would then review the ruling of the district court de novo.

■ In the strange universe created by § 2244(b), the court of appeals initially evaluates whether the petitioner has made a sufficient showing that his petition satisfies § 2244(b)'s requirements, i.e., that his claim is based on a new rule of constitutional law made retroactive by the Supreme Court or the discovery of new, material evidence, thereby warranting review by the district court. If the showing has been made, the district court is then called upon to make a final (appealable) ruling on whether § 2244(b)'s requirements are satisfied. If the district court concludes that the petition satisfies § 2244(b), it will then consider the merits of the claim. If the district court concludes otherwise, the habeas petitioner may make a second journey to the court of appeals for review concerning whether the petition was prop-

erly dismissed. Flowers's case comes to us on such a second journey.

**B. 28 U.S.C. § 2244(b) codifies *Teague***

■ The district court dismissed Flowers's second petition after concluding it did not meet § 2244(b)(2)(A)'s requirements concerning the filing of successive habeas petitions in federal court. Specifically, the district court found that Flowers's successive habeas petition was ineligible for federal review because the *Riggins* violation was not "a claim that relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). The district court reached its conclusion by interpreting the language of § 2244(b)(2)(A) "made retroactive to cases on collateral review by the Supreme Court," to require an *express* statement of retroactivity by the Supreme Court.

■ Flowers's appeal of the district court's ruling squarely presents a question of first impression in this circuit: when is a new rule of constitutional law made retroactive by the Supreme Court?[7] To de-

---

trict court must make an independent determination of whether § 2244(b)(4) is satisfied. *Id.* at 1164 ( "[a]lthough the statute does not explain the nature of this showing, ... the prisoner must make more than another prima facie showing [a showing of possible merit]." ).

7. While we have never confronted this question directly, we have decided two cases involving the § 2244(b)(2)(A) retroactivity standard where we evaluated whether the petitioner made a prima facie showing—a showing of possible merit.

In *Nevius v. Sumner*, 105 F.3d 453, 462 (9th Cir.1996), we confronted the issue whether a habeas petitioner was entitled to file in the district court a second habeas petition challenging the constitutionality of his conviction based on a defective reasonable doubt instruction given at his trial. Nevius conceded that he had not raised the reasonable doubt instruction claim in his first habeas petition, but contended that the claim could be raised in a successive petition under AEDPA because it relied on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* at 462 (quoting 28 U.S.C.

§ 2244(2)(b)(A)). Specifically, Nevius argued that his defective reasonable doubt instruction claim relied on the Supreme Court's holding in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), which was decided after the denial of his first federal habeas petition. *Id.* He argued that *Cage*, which held that a reasonable doubt instruction violates due process when it "suggest[s] a higher degree of doubt than is required for acquittal," *id.* at 41, 111 S.Ct. 328, was made retroactive to cases pending on collateral review by the Supreme Court's decision in *Adams v. Evatt*, 511 U.S. 1001, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994), in which the Court vacated an Eleventh Circuit decision that held *Cage* not to be retroactive. While we declined to offer "any view concerning the merits of Nevius's *Cage* claim, or any view regarding whether he has in fact met the requirements of 28 U.S.C. 2244(b)," we held that Nevius was entitled to file a successive petition in the district court because he had made the requisite *prima facie* showing that the application satisfied the requirements of § 2244(b)(3)(C). *Nevius*, 105 F.3d at 462.

We note that while the *Nevius* opinion did not provide an analysis of the language "made retroactive by the Supreme Court," other circuits have interpreted *Nevius* as

cide whether the district court erred by dismissing Flowers's petition, we must first interpret the language of § 2244(b)(2)(A), "made retroactive to cases on collateral review by the Supreme Court." [8]

This question presents a complicated issue of statutory interpretation, which has produced a split among the circuits. The First, Fourth, Fifth, Seventh, and Eleventh Circuits have held that a new rule of constitutional law is not "made retroactive" on collateral review within the meaning of § 2244(b)(2)(A) unless the Supreme Court has stated expressly that the new rule applies retroactively on collateral review, or the Supreme Court has itself applied the new rule retroactively in a collateral proceeding.[9] The Third Circuit has rejected this interpretation of § 2244(b)(2)(A) as unduly "narrow," and held that the plain language of § 2244(b)(2)(A) incorporates the retroactivity analysis in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See West v. Vaughn*, 204 F.3d 53, 53 (3d Cir.2000). We agree with the Third Circuit that Congress incor-

standing for the proposition that the Supreme Court does not need to make an explicit ruling in order to satisfy the statute. *See Rodriguez v. Superintendent*, 139 F.3d 270, 276 (1st Cir.1998); *In re Smith*, 142 F.3d 832, 835 (5th Cir.1998).

In *United States v. Lorentsen*, 106 F.3d 278 (9th Cir.1997), we were asked to decide whether a petitioner could file a successive habeas petition in the district court in which he argued that his conviction for violating of 18 U.S.C. § 924(c)(1) should be vacated in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The petitioner argued that *Bailey*, which construed the statutory definition of "using ... a firearm" more narrowly than it had been interpreted previously in the Ninth Circuit, constituted a "new rule of constitutional law, made retroactive to cases on collateral review" under AEDPA's amendment to 2244(b)(2)(A). In rejecting Lorentsen's argument, we held that *Bailey* "announced a *new statutory interpretation, not a new rule of constitutional law*," and thus did not constitute a "new rule" for 2244(b)(2)(A) purposes. *Id.* at 279 (emphasis added). We went on to state, in dicta, that "although some courts have made *Bailey* retroactive to cases on collateral review ... that decision has not yet been made by the Supreme Court, as required by the amended section 2255." *Id.* (citations omitted). Because we rejected Lorentsen's claim on the ground that his *Bailey* claim did not constitute a new rule, our discussion criticizing the approach of applying *Bailey* retroactively on collateral review without the retroactivity decision having first been made by the Supreme Court was inconsequential to the *Lorentsen* holding. *Id.* Moreover, our observation that a new rule could not be applied retroactively on collateral review until the decision to do so has been "made by the Supreme Court" was a conclusory statement that provided no reasoned

analysis of the significant and conflicting caselaw concerning this issue. *Id.*

8. We note that this language governs both the initial prima facie showing—a showing of possible merit—to the court of appeals as well as the more substantial showing required to avoid dismissal by the district court.

9. *Rodriguez v. Superintendent*, 139 F.3d 270, 274 (1st Cir.1998) ("AEDPA does not codify Teague. To the contrary: its plain language instructs that only new rules rendered retroactive on collateral review 'by the Supreme Court' may inure to the benefit of habeas petitioners."); *In re Vial*, 115 F.3d 1192, 1197 (4th Cir.1997) (en banc) ("[A] new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only when the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding."); *In re Smith*, 142 F.3d 832, 835 (5th Cir.1998) ("[A]n application to file a second or successive habeas application must point to a Supreme Court decision that either expressly declares the collateral availability of the rule (such as by holding or stating that the particular rule upon which the petitioner seeks to rely is retroactively available on collateral review) or applies the rule in a collateral proceeding.") (citation omitted); *Bennett v. United States*, 119 F.3d 470, 471 (7th Cir.1997) (denying petitioner's claim that *Riggins* satisfied requirement of § 2244(b)(2)(A) because "the Supreme Court has not declared *Riggins* retroactive; only when a decision has been specifically declared retroactive may it be used as the basis for a successive motion for habeas corpus[.]"); *In re Hill*, 113 F.3d 181, 184 (11th Cir.1997) (to proceed under § 2244(b)(2)(A) more than *Teague* analysis by lower court is required; applicant must establish that the Supreme Court has made the new rule of constitutional law retroactive).

porated *Teague*'s retroactivity analysis governing the application of new rules of constitutional law in collateral proceedings when it enacted 28 U.S.C. § 2244(b).

▋ Congress enacted AEDPA against a backdrop of past judicial practice, which most notably included the Supreme Court's decision in *Teague*. The Supreme Court announced in *Teague* the now familiar doctrine of non-retroactivity: unless a prisoner's case falls within one of two narrow exceptions, a habeas petitioner can not gain the benefit of a new rule of constitutional law if the rule was announced after the petitioner's conviction became final, nor can the petitioner seek to establish a new rule of constitutional law. *See, e.g., O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 1972, 138 L.Ed.2d 351 (1997) (describing the *Teague* doctrine). *Teague* established two exceptions to the non-retroactivity doctrine: (1) new rules that "place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; and (2) new watershed rules of criminal procedure. *Teague*, 489 U.S. at 290, 109 S.Ct. 1060 (plurality opinion).

We assume that Congress was aware of *Teague* and subsequent Supreme Court decisions affirming *Teague's* essential holding when it enacted 28 U.S.C. § 2244(b). *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) ("We assume that Congress is aware of existing law when it passes legislation.") (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). Absent a clear statement from Congress that it was rejecting the existing legal standard in enacting AEDPA, we will interpret § 2244(b)(2)(A) consistently with the retroactivity standard previously announced by the Supreme Court in *Teague*. *See, e.g., Cannon*, 441 U.S. at 699, 99 S.Ct. 1946.

The plain language of AEDPA, rather than rejecting the *Teague* approach and requiring an explicit statement from the Court, is broad enough to preserve *Teague*

retroactivity. As the Third Circuit explained:

> AEDPA's text does not restrict retroactive rules to those 'held retroactive' or 'applied retroactively' by the Supreme Court, but employs the more general term 'made retroactive.' At the time Congress enacted AEDPA, prevailing Supreme Court precedent 'made retroactive' on habeas review new rules that implicated the fundamental fairness of a criminal proceeding and related to the accuracy of the underlying conviction. *See, e.g., Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and we assume Congress to have been aware of this practice.

*West*, 204 F.3d at 55.

The Seventh Circuit recently rejected the Third Circuit's interpretation, asserting that *West* "confused a substantive question ('which decisions apply retroactively?') with a procedural question ('which court makes the retroactivity decision?')." *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir.2000). In our view, the *Talbott* court's conclusion misconstrues the holding in *West*. We read the *West* decision as consistent with the principle that retroactivity decisions concerning new rules of constitutional law are made by the Supreme Court. The *West* court explained:

> The question is not whether only the Supreme Court can make a new rule retroactive, but how that retroactivity is expressed. We find no indication that AEDPA eliminated the role of the lower federal courts in interpreting the effect of Supreme Court pronouncements.

204 F.3d at 62, n. 10.

▋ Retroactivity decisions by the Supreme Court can be manifest in three ways: (1) by explicitly stating that a new rule of constitutional law is retroactive; (2) by applying the new rule retroactively in a collateral proceeding; or (3) by in effect making a new rule retroactive where the new rule implicates the fundamental fairness of a criminal proceeding and is related to the accuracy of the underlying con-

viction. In this third approach, the lower courts determine whether a rule has been made retroactive by applying the Supreme Court's standard set forth in *Teague.* We find nothing in the language of § 2244(b)(2)(A) that suggests that Congress intended to eliminate the third approach in enacting AEDPA; i.e., to reject the retroactivity standard set forth by the Supreme Court in *Teague.*

Moreover, in Flowers's case, a reading of § 2244 that rejects the *Teague* retroactivity standard presents an added problem because Flowers seeks the benefit of the new rule announced in *Riggins,* which was decided *before* Congress enacted the AEDPA. Timing is critical here because when the Supreme Court decided *Riggins,* a new rule was indisputably "made retroactive" if it met one of the *Teague* exceptions. At the time *Riggins* was decided, nothing in *Teague* suggested that it was the Supreme Court's exclusive province to announce which new constitutional rules were made retroactive to cases on collateral review. Indeed, as discussed more fully below, quite the opposite was true.

As the First Circuit observed in *Rodriguez,* 139 F.3d at 274 (1st Cir.1998), under *Teague,*

> [i]n the absence of a direct statement by the Supreme Court, the lower federal courts were free to determine, in the first instance, whether a particular rule of constitutional law merited retroactive application and thus to determine whether (and, if so, to what extent) a habeas petitioner might take refuge in a new rule of constitutional law.

*Id.*

The fact that following the decision in *Teague,* "lower federal courts uniformly rule[d] in favor of collateral availability" makes it "unlikely that the Supreme Court would grant certiorari to declare the applicability of a rule announced on direct review to collateral proceedings." *In re Vial,* 115 F.3d 1192, 1196 n. 8 (4th Cir.

1997) (en banc). To conclude that the AEDPA requires that the Supreme Court *explicitly announce* the retroactive application of the new rule—when such a requirement did not exist at the time the Supreme Court announced the new rule—would effectively foreclose habeas relief to all prisoners claiming the benefit of a new rule announced before AEDPA's enactment. This would have the unjust effect of "preclud[ing] habeas relief for claims most clearly deserving of retroactive application." *West,* 204 F.3d at 62.

In sum, we conclude that § 2244(b)(2)(A) codifies *Teague.* Having determined that the *Teague* retroactivity analysis governs the case at bar, we now turn to the application of that standard to the new rule of constitutional law announced in *Riggins.*

### C. *Riggins v. Nevada* Constitutes a New Rule under *Teague v. Lane*

 A decision announces a new rule if it "breaks new ground or imposes a new obligation." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. As the plurality in *Teague* acknowledged, "[i]t is admittedly often difficult to determine when a case announces a new rule." *Id.* To decide whether the decision constitutes a new rule under *Teague,* we must "[s]urvey[ ] the legal landscape" as it existed when Flowers's conviction became final on direct appeal in 1982.[10] *Graham v. Collins,* 506 U.S. 461, 468, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). Under the § 2244(b)(2)(A) standard, we must further ask whether the new rule of law was "previously unavailable." In other words, we must determine whether the new rule was available in October of 1989, when Flowers filed his first habeas petition.

 In the case at bar, petitioner contends that the Supreme Court announced a new rule in *Riggins* when it held that the Sixth and Fourteenth Amendments are violated by the forceful administration of

---

**10.** The Washington Supreme Court denied Flowers's appeal on June 20, 1982. *State v.* *Flowers,* 97 Wash.2d 1024 (1982).

anti-psychotic medication to a criminal defendant during trial without a determination through a judicial hearing that the drugs are medically appropriate and essential for the safety of the defendant and others. *Riggins,* 504 U.S. at 132–38, 112 S.Ct. 1810. The district court found that the *Riggins* rule was unavailable to Flowers at the time he filed his first petition, but did not reach the purely legal question whether *Riggins* constitutes a new rule of constitutional law because it found that the Supreme Court had not expressly made *Riggins* retroactive on collateral review. Because we determine that § 2244(b)(2)(A) codifies the *Teague* standard of retroactivity, we must answer this purely legal question left unanswered by the district court.

No circuit has squarely addressed the question whether *Riggins* announced a new rule for purposes of the *Teague* analysis.[11] To answer this question, we turn to the language of the Supreme Court in *Teague* and ask whether *Riggins* "[broke] new ground or impose[d] a new obligation" on the states that did not exist at the time Flowers's conviction became final, or at the time of his first habeas appeal. *Teague,* 489 U.S. at 301, 109 S.Ct. 1060.

Flowers's conviction became final on direct review and his first habeas petition was denied before the Supreme Court's decisions in *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) and *Riggins.* The *Harper* and *Riggins* decisions were therefore unavailable

to Flowers within the meaning of § 2244(b) at the time he filed his first petition.

*Harper* "broke new ground" by holding for the first time that prisoners have a liberty interest, protected by the Due Process Clause, in remaining free from forced medication. *Harper,* 494 U.S. at 221, 110 S.Ct. 1028. The Court held that a state may administer medication against a prisoner's will only after a determination that the prisoner is dangerous to himself or others, and that the medication is in the prisoner's medical interest. *Id.* at 227, 110 S.Ct. 1028. The Court found that protecting prisoners' substantive due process rights to remain free from unwarranted forced medication requires an administrative hearing before the state may medicate the prisoner against his or her will. *Id.* at 228, 110 S.Ct. 1028.

In *Riggins,* the Court dramatically expanded the rights of defendants to be free from the involuntary administration of anti-psychotic medication during criminal trials by requiring states to justify the forced medication. 504 U.S. at 135, 112 S.Ct. 1810. The Court found that the defendant's due process right was violated when he was forced to face trial under the influence of a high dose of anti-psychotic drugs in the absence of specific findings by the trial court of overriding necessity of medication. *Id.* at 135–37, 112 S.Ct. 1810. The Court extended the *Harper* rule to defendants facing trial, and held that a

---

11. As discussed in Part II.B, the Seventh Circuit concluded in *Bennett* that § 2244 imposed a higher burden for findings of retroactivity than that imposed by *Teague.* The Seventh Circuit rejected the petitioner's contention that *Riggins* announced a new rule made retroactive by *Teague* based on its reading of § 2244: "[t]he claim is obviously without merit, *if only* because the Supreme Court has not declared *Riggins* retroactive." *Bennett,* 119 F.3d at 470 (emphasis added).

The Eighth Circuit in *Heffernan v. Norris,* 48 F.3d 331 (8th Cir.1995) also faced a petitioner's claim that *Riggins* should be applied retroactively under *Teague.* The petitioner's *Riggins* claim in *Heffernan,* however, was procedurally defaulted. *Heffernan,* 48 F.3d at 333. The court thus had to address first

whether the *Riggins* rule was "so novel that its legal basis [wa]s not reasonably available to counsel," the standard for excusing the procedural default. *Id.* (quoting *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). The Eighth Circuit found that the due process constitutional issues at the heart of *Riggins* were recognized by state law cases and that the Supreme Court was likely to consider the claims raised by Riggins favorably. Based on these findings, the court concluded that the *Riggins* ruling was insufficiently novel. *Id.* at 334. The court carefully noted that the standard for procedural default—whether *Riggins* was sufficiently "novel"—differs from the standard governing whether a case announces a new rule under *Teague. See id.* at 334, n. 2.

"finding of overriding justification and a determination of medical appropriateness" was a prerequisite to forced medication.[12] *Id.*

This court, in summarizing the import of these two cases for detainees awaiting trial, stated: "[i]n the context of both *Harper* and *Riggins* such an invasion of the human person can only be justified by a determination by a neutral factfinder that the antipsychotic drugs are medically appropriate and that the circumstances justify their application." *Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir.1998). Before *Harper*, the states were under no obligation to provide a determination by a neutral factfinder before administering unwanted antipsychotic drugs to prisoners, and before *Riggins* the state had no similar obligation before administering unwanted drugs to criminal defendants at trial. *See United States v. Brandon*, 158 F.3d 947, 951–52 (6th Cir.1998) (discussing the state of the law before *Harper* and noting that the Supreme Court had rejected the need for a judicial hearing and deferred to medical judgment alone in *Parham v. J.R.*, 442 U.S. 584, 609, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1987) and *Youngberg v. Romeo*, 457 U.S. 307, 321, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)); Winick, *New Directions*, at 214–20 (describing the ways *Harper* and *Riggins* fundamentally changed the law regarding the right of prisoners and criminal defendants to refuse unwanted drug medication).

Riggins thus falls squarely into the category of cases that fundamentally changed the legal landscape by imposing new burdens and obligations on states. *Riggins* announced a new rule requiring the states under the Sixth and Fourteenth Amendments to demonstrate overriding necessity and medical appropriateness before forcibly medicating defendants during a criminal trial. This requirement imposed a new obligation upon states. Under *Teague*, the new rule of constitutional law announced in *Riggins* can only be applied retroactively to Flowers if it falls within one of the narrow exceptions to the non-retroactivity doctrine.

### D. *Riggins* Applies Retroactively Under *Teague*'s Second Exception

■ Under the retroactivity standard adopted by *Teague*, federal courts may apply a new constitutional rule of ˝criminal procedure to habeas petitions if the rules are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," *Graham v. Collins*, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993), that "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (citing *Teague*, 489 U.S. at 311, 109 S.Ct. 1060).[13]

---

**12.** Whether the Court imposed a new strict scrutiny standard of review is a matter of some debate. *Compare Riggins*, 504 U.S. at 136, 112 S.Ct. 1810 ("Contrary to the dissent's understanding, we do not 'adopt a standard of strict scrutiny.' "); *with* Bruce J. Winick, *New Directions in the Right to Refuse Mental Health Treatment: The Implications of Riggins v. Nevada*, 2 Wm. & Mary Bill Rts. J. 205, 211 (1993) ("The Court purported to apply the standard for considering the constitutionality of involuntary medication it had used in *Harper*, but in fact, it reformulated the standard.").

**13.** The plurality limited the second exception to those "new procedures without which the likelihood of obtaining an accurate conviction

is seriously diminished." *Teague v. Lane*, 489 U.S. 288, 313, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Justices Stevens and Blackmun concurred in the application of the second exception, but dissented to the extent that the plurality required "fundamental fairness of procedures" to be linked to factual innocence. *Id.* at 321–22, 109 S.Ct. 1060 (Stevens, J., concurring). As noted, *infra*, the Supreme Court has since adopted the plurality's articulation of the test. *See Caspari v. Bohlen*, 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (second exception applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding") (citing *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)).

Although the "precise contours of this exception may be difficult to discern," *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), federal courts have applied *Teague*'s second exception to a range of constitutional rules of criminal procedure. *See e.g., Ostrosky v. Alaska*, 913 F.2d 590, 594–95 (9th Cir.1990) (announcing a new due process rule concerning mistake of law defenses and finding that the rule falls within the *Teague* exception for "procedures implicit in the concept of ordered liberty"); *Hall v. Kelso*, 892 F.2d 1541, 1543 n. 1 (11th Cir.1990) (finding as an exception the rule announced in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), regarding burden shifting instructions); *Graham v. Hoke*, 946 F.2d 982 (2d Cir.1991) (finding as an exception the rule announced in *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1997), that non testifying codefendant's confession may not be admitted); *Williams v. Dixon*, 961 F.2d 448, 454–56 (4th Cir.1992) (finding as an exception the rule in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), striking the unanimity requirement in jury findings of mitigating evidence); *Gaines*, 202 F.3d at 604 (finding as an exception the *Cage* rule that describing reasonable doubt in terms of "grave" or "substantial" uncertainty and requiring a "moral certainty" violates due process).

We conclude that the rule announced in *Riggins*—that states must justify forced medication of the defendant during a criminal trial—is a rule of criminal procedure that implicates the kind of fundamental fairness contemplated in *Teague*. In his concurring opinion, Justice Kennedy described the problem of forcibly medicating a defendant for trial as raising "far reaching concerns," 504 U.S. at 141, 112 S.Ct. 1810, because of the capacity of the drugs to "compromise the right of a medicated criminal defendant to receive a fair trial." *Id.* at 142, 112 S.Ct. 1810 (J. Kennedy, concurring). "When the State commands medication during the pretrial and trial phases of the case for the avowed purpose of changing the defendant's behavior, the concerns are much the same as if it were alleged that the prosecution had manipulated material evidence." *Id.* at 139, 112 S.Ct. 1810.

The Supreme Court majority in *Riggins* recognized that the consequences of failing to adequately protect the defendant's due process right to be free from unwarranted forced medication threatened the defendant's constitutionally guaranteed trial rights. *Riggins*, 504 U.S. at 137, 112 S.Ct. 1810. "It is clearly possible that such side effects [of the medication] had an impact upon not just Riggins' outward appearance, but also the content of his testimony on direct or cross examination, his ability to follow the proceedings, or the substance of his communication with counsel." *Id.*

Adherence to the *Riggins* rule is thus necessary for the meaningful protection of a defendant's right to counsel, right to confrontation, right to present evidence, and right to a trial free from prejudice. Each of these constitutional rights lies at the heart of the procedural protections designed to ensure a fair trial and uphold the integrity of the criminal justice system. *See Kirby v. United States*, 174 U.S. 47, 55, 19 S.Ct. 574, 43 L.Ed. 890 (1899) (describing the right to confrontation as "[o]ne of the fundamental guarantees of life and liberty"); *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) ("[C]ross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."); *Grosjean v. American Press Co.*, 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (holding that certain fundamental rights are protected by the Fourteenth Amendment, including the "fundamental right of the accused to the aid of counsel"); *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' "); *Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (describing the "most

basic ingredients of due process of law" as including "'at a minimum, a [defendant's] right to examine the witnesses against him, to offer testimony, and to be represented by counsel.'") (quoting *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948)).

We therefore conclude that the rule in *Riggins*, formulated to ensure protection of these critical trial rights falls within the exception to the general prohibition against the retroactive application of new constitutional rules of criminal procedure. We hold that the rule announced in *Riggins* applies to convictions on both direct and collateral review. For the purposes of § 2244(b)(2)(A), the *Riggins* rule constitutes a new rule to be applied retroactively because it meets the standard imposed by the Supreme Court in *Teague* for retroactive application.

### III.

### CONCLUSION

The standard for second or successive petitions set forth in § 2244(b)(2)(A) codifies the standard for retroactive application set forth in *Teague*. Under the *Teague* standard, the rule announced in *Riggins* is a new constitutional rule of criminal procedure, entitled to retroactive application because it implicates the fundamental fairness and integrity of the entire criminal proceeding. The *Riggins* rule was unavailable when Flowers filed his first habeas petition. Flowers is therefore entitled under § 2244(b)(2)(A) to file a successive habeas petition alleging a *Riggins* violation. The opinion of the district court dismissing Flowers's habeas petition is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.