UNITED STATES of America, plaintiff,

v.

Jerry Glenn TOSH, defendant.

No. CR. A. 3:82CR–57–H.

United States District Court,
W.D. Kentucky,
at Louisville.

April 17, 2001.

Alexander T. Taft, Jr., AUSA, Louisville, KY, for Plaintiff.

Scott C. Cox, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendant Jerry Glenn Tosh ("Tosh") moves the Court to correct his 1985 sentence pursuant to Federal Rule of Criminal Procedure 35(a); *United States v. Dale*, 178 F.3d 429 (6th Cir.1999) and the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant argues that under these decisions his ten year sentence—which exceeds the statutory maximum sentence for a 1982 crime involving only marijuana [1]—is illegal because his jury returned only a general verdict of guilty and did not use a special verdict form specifically finding him guilty of conspiring to distribute both marijuana and cocaine.[2] Defendant's seemingly straightforward motion masks complex constitutional issues of fundamental importance.

■ Generally, new constitutional rules of criminal procedure apply retroactively only to cases on direct appeal when the rule is announced. *See Griffith v. Kentucky*, 479 U.S. 314, 323, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Our courts have been very reluctant to undo a final criminal conviction based on retroactive application of new law on collateral review. The Supreme Court set out a strict standard for doing so in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). It did so recognizing the need for some point of finality in a criminal judgment, *id.* at 309, 109 S.Ct. 1060, and that all similarly situated defendants should be governed by the same law. *Id.* at 304, 109 S.Ct. 1060. More recently, The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, codified certain aspects of *Teague* as well as significant procedural

---

1. In 1982, the maximum sentence for conspiring to distribute an unspecified amount of marijuana was five years for someone with no prior felony drug conviction. 21 U.S.C. § 841(b)(1)(B)(1982); *United States v. Orozco–Prada*, 732 F.2d 1076, 1083 (2nd Cir. 1984).

2. To avoid confusion, it is important to note at the outset this Court's belief that *Apprendi* and *Dale* do not carry the meaning Defendant asserts. *Apprendi* held that other than the fact of prior conviction, any fact that increases penalty for crime beyond the prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt. 120 S.Ct. at 2362–63. *Apprendi* alone does not require this Court to find Defendant's sentence is illegal since the issue of his conspiracy to distribute both marijuana *and* cocaine was submitted to a jury.

With reasoning that presaged *Apprendi,* the Sixth Circuit in *Dale* held that where an indictment charged a defendant with conspiracy to distribute both marijuana and crack cocaine, and where the jury was instructed that it must unanimously agree as to *which* controlled substance or both the Defendant conspired to distribute, a defendant must be sentenced as if he conspired to distribute only marijuana. 178 F.3d at 431–32. The Sixth Circuit followed *Dale* with its recent decision in *United States v. Neuhausser*, 241 F.3d 460 (6th Cir.2001), which significantly restricts *Dale* instructing that *Dale's* rule only governs cases where a jury's general verdict is ambiguous such that it cannot be determined whether the jurors unanimously agreed as to one or another of multiple drugs alleged to be involved in a conspiracy. *Id.* at 470. Where an indictment alleges a conspiracy to distribute cocaine and marijuana, and where the indictment and instructions uniformly and consistently directed the jury to consider whether a defendant conspired to distribute both marijuana and cocaine, the jury will be presumed to follow their instructions and a general guilty verdict will stand. *Id.* at 471.

Since Defendant does not allege the jury instructions in his case were improper, it is highly unlikely Defendant could prevail even if the Court were to reach the merits of his claim. *See* discussion *infra* part III.B.

limitations on filing second or successive habeas petitions. 28 U.S.C. § 2244(a)-(d)(West Supp.2000); *see also Flowers v. Walter,* 239 F.3d 1096, 1100–01 (9th Cir. 2001) (discussing AEDPA's new provisions and some of the legal issues arising from its enactment).

Using the principles set forth in *Teague,* and for the reasons which follow, this Court ultimately concludes that the law of *Dale* and *Apprendi* cannot be applied retroactively to this case.

## I.

Over 16 years ago, Defendant was indicted for conspiracy to distribute both cocaine and marijuana. His case went to trial in 1985 and the jury returned a general verdict of guilty as to all charges in the indictment. Pursuant to that verdict, Defendant was convicted of conspiracy to unlawfully distribute and possess with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 846, and aiding and abetting the commission of this conspiracy, in violation of 18 U.S.C. § 2. He was acquitted of the charge of possession with the intent to distribute cocaine.[3] On May 15, 1985, Judge Thomas Ballantine sentenced Defendant to ten years imprisonment. Rather than voluntarily surrender, Defendant ran and remained a fugitive at large from June 18, 1985—the date designated for his surrender—to October 11, 1996.

Following his conviction Defendant filed a timely notice of appeal to the Sixth Circuit but this appeal was dismissed on August 21, 1985, not surprisingly, for want of

prosecution. Since no petition for writ of certiorari was filed with the Supreme Court within sixty days of this dismissal—the time within which a petition for writ of certiorari had to be filed under the Supreme Court Rules in effect in 1985—his conviction became final on October 21, 1985. SUP. CT. R. 20 (West 1985); *Teague,* 489 U.S. at 295, 109 S.Ct. 1060 (defining finality as the point when a judgment of conviction has been rendered, availability of appeal has been exhausted, and the time for petition for certiorari to the Supreme Court has expired).

## II.

The result in this case turns on certain threshold jurisdictional issues. The first is precisely which avenue of relief is available to a defendant whose initial appeal was dismissed for want of prosecution over fifteen years ago. If Defendant must seek habeas relief under AEDPA, he faces a virtually impenetrable procedural and substantive minefield. *See Flowers,* 239 F.3d at 1100–01 (explaining AEDPA's procedural requirements for second or successive habeas petitions). Relief under FED. R. CRIM. P. 35, by comparison, is merely complex and difficult. Therefore, a crucial question is whether relief under Rule 35(a) is available for Defendant's 1985 conviction.

■ In its current form, Rule 35(a) allows a court to correct a sentence only after a court of appeals has determined the sentence is either illegal, a result of incorrect application of the guidelines, or unrea-

---

**3.** The record is quite old and it is difficult to determine the precise details surrounding his indictment, conviction, and sentencing. However the parties appear to agree on all the pertinent facts. In recognizing Defendant was acquitted of the charge that he possessed with the intent to distribute cocaine the Court relies on statements by Defendant's counsel.

In any case this fact is not relevant to the outcome of today's decision. Moreover, it is not at all inconsistent that Defendant might be found not guilty of the charge of possession with intent to distribute cocaine, while found guilty of the charge of conspiracy to possess with the intent to distribute marijuana and cocaine.

sonable. FED. R. CRIM. P. 35(a). In 1985, Rule 35(a) permitted a court to "correct an illegal sentence at any time" ("Old Rule 35(a)").[4] *Id.* Moreover, Defendant properly invokes Old Rule 35(a) for the precise purpose for which it was intended: to correct a sentence that is illegal because the punishment meted out exceeds that prescribed by (what Defendant asserts to be) the relevant statute. *Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Consequently, the Court concludes that Defendant may use Old Rule 35(a) to challenge the legality of his 1985 sentence.

### III.

The Court next faces the central issue: whether *Apprendi* and *Dale* can apply retroactively. The proper resolution of this issue is both more significant, and more complex, than the substantive merits.

■ In *Teague* the Supreme Court established the standard for retroactively applying new law. At the outset, it established that "[r]etroactivity is properly treated as a threshold question." 489 U.S. at 300, 109 S.Ct. 1060. The Court then strictly limited the retroactive application of new constitutional rules. Only new constitutional rules that (1) place primary private individual conduct beyond the power of criminal law-making authority to proscribe or (2) are "implicit in the concept of ordered liberty" would apply retroactively. *Id.* at 310–11, 109 S.Ct. 1060. Subsequently, in *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), the Court explained that the *Teague* inquiry

should be conducted in three steps: first, the date on which the defendant's conviction became final must be determined; second, the reviewing court must consider whether the constitutional rule the defendant seeks to invoke was dictated by precedent existing at the time the defendant's conviction became final; finally, the court must determine whether the rule falls within one of the two *Teague* exceptions. *Id.* at 156–57, 117 S.Ct. 1969. This Court now proceeds with that inquiry.

### A.

■ Defendant's conviction become final on October 21, 1985. The rules announced in *Apprendi* and *Dale* should be regarded as "new" under *Teague* if they were not dictated by precedent existing on that date. A rule is "dictated by precedent" when a reasonable district court judge would have felt *compelled* to adopt the rule at the time a defendant is convicted and sentenced. *O'Dell,* 521 U.S. at 156, 164, 117 S.Ct. 1969 (emphasis added).

■ By 1985 some circuits had adopted a rule requiring that the government seek a special verdict in a multiple drug conspiracy when the sentence exceeds the statutory maximum for the type of drug with the lowest penalty. This is the rule which Defendant claims is established by *Apprendi* and *Dale.* In 1984, on facts quite similar to the present case the Second Circuit adopted this rule in *United States v. Orozco–Prada,* 732 F.2d 1076, 1084 (2nd Cir.1984). The Fourth, D.C., and Ninth Circuits adopted similar rules. *See United*

---

4. Rule 35 was amended as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 215(b), 98 Stat. 1837, 2015–16. *See also* S.Rep. No. 225, 98th Cong., 2d Sess. 158, reprinted in 1984 U.S.C.C.A.N. 3182, 3341; *United States v. Fraley,* 988 F.2d 4, 6 (4th Cir.1993). Section 235(a)(1) of Public Law 98–473, as amended, provided that the new rule 35(a) would take effect on November 1, 1987 and would apply only to offenses committed after that date. 98 Stat. 1837, 2015–16, 2031 (1984). *See also United States v. Corbitt,* 13 F.3d 207, 211 (7th Cir.1993). Old Rule 35(a) remains applicable to conduct occurring before November 1, 1987. *Id.*

States v. Quicksey, 525 F.2d 337, 340–41 (4th Cir.1975); Brown v. United States, 299 F.2d 438, 440 (D.C.Cir.1962); United States v. Noah, 475 F.2d 688, 693 n. 7 (9th Cir.1973) (citing to Brown, 299 F.2d at 440).

However, only the Sixth Circuit could have compelled Judge Ballentine to adopt a similar rule in sentencing Defendant. In the early 1980s the Sixth Circuit seems to have disfavored the use of special verdicts in criminal cases. United States v. Wilson, 629 F.2d 439, 442 (6th Cir.1980) ("it is one of the most essential features of the right to trial by jury that no jury should be compelled to find any but a general verdict in criminal cases..." (quoting GEORGE B. CLEMENTSON, SPECIAL VERDICTS AND SPECIAL FINDINGS BY JURIES 49 (1905))). A district court judge sitting in the Sixth Circuit in 1985 would not have felt compelled to adopt the rule that Defendant now proposes.

Apprendi appears to be new as well. Although it adheres to our deeply rooted historical commitment that trial by jury requires proof beyond a reasonable doubt on every element of an offense, 120 S.Ct. at 2356 ("the historical foundation for our recognition of these principles extends down centuries into the common law"), the decision reversed a recent trend allowing judges greater latitude to decide certain facts relevant to sentencing. McMillan v. Pennsylvania, 477 U.S. 79, 85–86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), allowed certain facts to be found by a judge by a preponderance of the evidence standard if they were "sentencing factors" rather than elements of the offense. That the Apprendi Court went to great lengths to distinguish McMillan suggests that the rules contained in Apprendi were not dictated by the pre-McMillan precedent. See Apprendi, 120 S.Ct. at 2361 n. 13; see also id. at 2381 (O'Connor, J., dissenting) ("... the

[Apprendi majority] cannot identify a single instance, in the over 200 years since the ratification of the Bill of Rights, that our Court has applied, as a constitutional requirement, the rule it announces today.").

The Court concludes, therefore, that the rules which Defendant proposes are new for the purposes of Teague. See also, Browning v. United States, 241 F.3d 1262 (10th Cir.2001) ("Because the rule set forth in Apprendi is rooted in the jury trial and due process guarantees of the Sixth and Fourteenth Amendments, it can fairly be called a 'new rule of constitutional law...'"); Sustache–Rivera v. United States, 221 F.3d 8, 15 (1st Cir.2000) (finding Apprendi states a new rule of constitutional law).

**B.**

This Court should retroactively apply such a new rule only if it fits within one of Teague's exceptions. 489 U.S. at 310–11, 109 S.Ct. 1060. Since Defendant does not, and could not, assert that the government may not constitutionally proscribe a conspiracy to distribute illegal drugs the first exception is inapplicable. Therefore, Defendant can rely on Dale and Apprendi only if a rule established in one or both of those cases is a "watershed" rule of criminal procedure that is "implicit in the concept of ordered liberty." Id.

■■■ To fall within this second Teague exception Defendant must invoke a rule that implicates both the accuracy and fundamental fairness of a criminal trial. Teague, 489 U.S. at 311–12, 109 S.Ct. 1060. The procedure(s) established by the new rule must be so central to the accurate determination of guilt or innocence that without it the likelihood of an accurate conviction is seriously undermined. Id. at 312, 109 S.Ct. 1060. The rule must also be so connected to the trial's fundamental

fairness that is alters our understanding of a "bedrock procedural element." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822 (1990). These elements must be established with respect to both criminal trials in general and to the particular defendant before the court. *Teague*, 489 U.S. at 315–16, 109 S.Ct. 1060. The Court will address these principles as applied to *Dale* and *Apprendi*.

Finding a rule retroactive through this second exception is understandably rare. There is however, some precedent for it. *Teague* cited with approval Justice Harlan's belief that the right to counsel at trial was such a rule. *Id.* at 311–12, 109 S.Ct. 1060. Seven circuit courts of appeals have held that the right to a constitutionally sound reasonable doubt instruction, as set forth by Sullivan v. Louisiana, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), meets *Teague's* second exception.[5] The Fourth Circuit found a Supreme Court decision striking a state unanimity requirement for a capital sentencing jury's finding of mitigating circumstances fell within this exception. *Williams v. Dixon*, 961 F.2d 448, 455–56 (4th Cir.1992) (discussing *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990)).

In *Dale*, the Sixth Circuit adopted a rule requiring that when a jury returns a general verdict for a conspiracy covering multiple drugs, the trial court must sentence a defendant as if he distributed only the drug carrying the lower penalty. 178 F.3d at 432, 434. The concern was that the use of a general verdict on a charge covering multiple drugs made it difficult to discern whether the jury found the defendant guilty with respect to just one drug or to all the drugs charged in the conspiracy. The Sixth Circuit distinguished *Dale* with its subsequent decision in United States v. Neuhausser, 241 F.3d 460, 470 (6th Cir. 2001) which limits *Dale* to situations where the indictment and instructions are ambiguous such that it cannot be determined whether the jury rendered a guilty verdict as to just one of two controlled substances or both substances. Where an indictment and instructions are clear, a judge may properly sentence a defendant as if he distributed either or both drugs. *Id.*

Neither *Dale* nor *Neuhausser* addressed the issue of whether allowing a judge to sentence a defendant by the preponderance of the evidence produced at trial touches fundamental constitutional concerns. Nor did *Dale* address whether a judge deciding certain facts relevant to sentencing by a preponderance of the evidence violated the criminal defendant's constitutional rights to due process and to a trial by jury. These concerns may have been implicit in *Dale* and *Neuhausser* but these decisions never reach beyond the appropriateness of a particular sentence given particular jury instructions. It is only in *Apprendi* that *Dale*'s concerns over sentencing achieve constitutional significance. The Court concludes, therefore, that *Dale* can implicate the fundamental fairness or accuracy of the trial only if applied with *Apprendi*. Standing alone it touches neither.

### C.

As applied to criminal defendants in general, reasonable minds already differ as to whether *Apprendi* states a rule suffi-

---

5. *See Gaines v. Kelly*, 202 F.3d 598, 605 (2d Cir.2000); *West v. Vaughn*, 204 F.3d 53, 62–63 (3rd Cir.2000); *Adams v. Aiken*, 41 F.3d 175, 178–79 (4th Cir.1994); *Humphrey v. Cain*, 138 F.3d 552, 553 (5th Cir.1998)(en banc); *Harmon v. Marshall*, 69 F.3d 963, 967 (9th Cir.1995); *Tillman v. Cook*, 215 F.3d 1116, 1122 (10th Cir.2000); *Nutter v. White*, 39 F.3d 1154, 1158 (11th Cir.1994).

ciently related to the accuracy and fairness of a trial to meet *Teague*'s second exception. However, one cannot ignore that the Supreme Court justices in both the majority and minority attached great significance to the new rule. Justice O'Connor, in her dissent, described *Apprendi* as a "watershed change in constitutional law," 120 S.Ct. at 2380, and the majority viewed its opinion as addressing "constitutional protections of surpassing importance." *Id.* at 2355.

*Apprendi* holds that all facts (except the fact of prior conviction) which increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 120 S.Ct. at 2362–63. Two related principles motivate the Court's conclusion: the criminal defendant's right to trial by jury and his right to have the jury's verdict be based on proof beyond a reasonable doubt. *Id.* at 2356. Prior to *Apprendi* certain facts, which dramatically effected the length of a sentence, could be decided by a judge under a preponderance of the evidence standard if those facts were classified as "sentencing factors" rather than elements of a crime. *Apprendi* dismissed this distinction stating that "the relevant inquiry is one not of form, but of effect— does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 2365. After *Apprendi*, any such finding must be determined by a jury beyond reasonable doubt.

The increased accuracy and fairness of having a jury, rather than a judge, determine certain facts is an open and difficult question for which there is no clear resolution. *Compare Apprendi*, 120 S.Ct. at 2367 (Scalia, J., concurring) (fairness and accuracy is best achieved through jury deliberation), *with id.* at 2397 (Breyer, J. dissenting) (within modern statutory system Judicial finding of certain facts is superior to jury determination). However, the principle that criminal guilt must be proven beyond a reasonable doubt is clearly one of constitutional significance. *See id.* at 2359 ("... the 'reasonable doubt' requirement 'has a vital role in our criminal procedure' ...") (citing *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)) (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895)). By definition, reasonable doubt is significantly more accurate than a preponderance of the evidence.

Moreover, *Apprendi's* majority opinion seems to locate the beyond reasonable doubt standard of criminal convictions among the fundamental elements of the criminal justice system. It states that "the demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times...", that this standard "is now accepted in common law jurisdictions...", and that this reliance on the reasonable doubt standard "reflects a profound judgment about the way in which law should be enforced and justice administered." *Id.* at 2356 (citations omitted). Finally, *Apprendi's* extensive citation of *Winship*, indicates an approval of *Winship's* declaration that: "a person accused of a crime...would be at a severe disadvantage, a disadvantage *amounting to a lack of fundamental fairness*, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." *Winship*, 397 U.S. at 363, 90 S.Ct. 1068 (citations omitted) (emphasis added).[6] This is a most persuasive view.

---

6. It could be argued that *Apprendi* is not concerned with the fundamental fairness or accuracy of guilt or innocence, only with the severity of punishment after guilt has been

The question of applying *Apprendi* retroactively is a novel and developing issue. The few courts applying *Teague's* second exception to *Apprendi* have reached differing conclusions. *See United States v. Murphy*, 109 F.Supp.2d 1059, 1064 (D.Minn.2000) ("There can be little doubt that the sweeping new requirement announced by the Court in *Apprendi* is so grounded in fundamental fairness that it may be considered of watershed importance ... the *Apprendi* decisions falls under the second exception to the *Teague* nonretroactivity principle..."). *Contra. Jones v. Smith*, 231 F.3d 1227, 1238 (9th Cir.2001) (holding that the *Apprendi* rule is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial); *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir.2000) (cautioning prisoners against basing an initial collateral attack on *Apprendi*). The Sixth Circuit has not yet ruled on this issue. *See Jones v. U.S.*, 2001 WL 92114 at *2 (6th Cir.2001) (remanding case to district court for determination of whether *Apprendi* applies retroactively under *Teague*).

While appreciating these differences of opinion, the Court is persuaded by the words of the justices themselves and concludes, therefore, that as applied to criminal defendants in general, *Apprendi's* rule may fall within *Teague's* second exception.

### D.

Finding that *Apprendi* may fit Teague's second exception with respect to defendants in general is *not* a finding that *Apprendi* fits this exception so as to be retroactive to Defendant's case. Any new rule made retroactive through *Teague's* second exception must meet *Teague's* requirement's of accuracy and fairness with respect to both criminal defendants in general and the defendant presently before the court. *Teague*, 489 U.S. at 316, 109 S.Ct. 1060. Applying *Dale* and *Apprendi* to Defendant's case without recognizing their application to other cases on post-finality review would violate equal protection. *Id.* Conversely denying retroactive application of *Dale* or *Apprendi* to Defendant, while deciding *Dale* or *Apprendi* may be applicable to other defendants not presently before the Court would be a purely advisory opinion. To properly consider the retroactivity of Defendant's proposed rule it must be at least facially related to the fairness and accuracy of Defendant's own trial.

■ Here, *Apprendi's* application to our facts would not affect the accuracy or fairness of Defendant's trial because De-

properly determined. *Apprendi* seems to have implicitly considered and rejected this argument by its discussion of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In *Mullaney* the state of Maine had a statute that presumed a defendant who acted with an intent to kill possessed the "malice aforethought" necessary to constitute murder. The state argued that requiring a defendant to prove heat-of-passion intent to overcome this presumption of murderous intent did not implicate the right to have guilt be proven beyond reasonable doubt because defendant would be guilty of some crime upon conviction of either murder or manslaughter—the only difference being the length of imprisonment. *Id.* at 696–97, 95 S.Ct. 1881. The Supreme Court rejected this argument noting

(in language quoted in *Apprendi*) that the reasonable doubt requirement of the Due Process Clause "is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpability." *Apprendi* at 2360 (quoting *Mullaney*, 421 U.S. at 697–98, 95 S.Ct. 1881); *but see id.* at 2384 (O'Connor, J., dissenting) (arguing that the majority's expansive reading of *Mullaney* was rejected by *Patterson v. New York*, 432 U.S. 197, 214–15, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). Further, the Court explicitly stated that when a factual finding is used to increase a sentence beyond the statutory maximum for the crime covered by the jury's verdict, "it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.*, 120 S.Ct. at 2365 n. 19.

fendant does not challenge the jury instructions used in his trial. These instructions do not appear to have been included in the record. But Defendant has not alleged they were improper and it can therefore be presumed that the jury was instructed to consider whether Defendant conspired to distribute both cocaine and marijuana in finding him guilty as charged. The jury returned a guilty verdict as to the charge in its entirety. Defendant offers no evidence that the jury did not follow these instructions faithfully and the Court has no reason to suspect that the jury did not follow the plain meaning of the jury charge.

Assuming the instructions were proper, the Court's reliance on a general verdict of guilty in sentencing Defendant for a conspiracy involving both cocaine and marijuana rather than a special verdict specifically finding Defendant guilty of a conspiracy involving cocaine is not fundamentally unfair. True, a special verdict might have been more clear. But the difference in clarity achieved by a special verdict is not a fundamental element of ordered liberty. Since the inception of the jury system, civilized common law societies have relied on general jury verdicts. *See United States v. Wilson*, 629 F.2d 439, 442 (6th Cir.1980).

Since applying *Dale* and *Apprendi* would not affect the fundamental fairness or accuracy of Defendant's trial they cannot be retroactively applied to his case.

### IV.

Having decided that *Teague* bars the retroactive application of *Apprendi* and *Dale*, the Court lacks jurisdiction to decide the merits of Defendant's motion. As explained above Defendant could not succeed even if *Apprendi* and *Dale* could apply retroactively. *See supra* note 2 & part III.B. In either event the conclusion is the same: Defendant's 1985 sentence is legal. The Court cannot and should not correct it.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved the Court to correct his sentence pursuant to Fed.R.Civ.P. 35(a). For the reasons set forth in the accompanying Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to correct his sentence is DENIED.

This is a final and appealable order.